CIVIL CITY OF INDIANAPOLIS ET AL. *v.* OSTROM REALTY AND CONSTRUCTION CO.

[No. 14,182. Filed May 27, 1931. Rehearing denied October 1, 1931. Transfer denied December 21, 1932.]

*Edward H. Knight* and *Albert Stump,* for appellants.
*Martin M. Hugg* and *L. R. Zaff,* for appellee.

KIME, J.—This is an action for an injunction and damages brought by appellee to enjoin the appellants from interfering with the construction of a building. The appellee filed an amended complaint, which alleged, in substance: That on or about the 22d day of July, 1926, it acquired by purchase lots Nos. 1, 2, 3, 4, 5, and 6 in Blue's Outlook, a subdivision of the city of Indianapolis; that lots 1 and 2 thereof were located in and about the conjunction of Forty-sixth Street and Boulevard Place in said city. That on or about June 22, 1926, the *City Plan Commission* of the city of Indianapolis, *by resolution unanimously adopted, zoned* the property for business purposes, and that relying upon the action of said City Plan Commission in so establishing said prop-

erty as a place where a business structure might be erected, the appellee caused to be drawn plans and specifications for a business structure; that said plans and specifications were in due course submitted to the Board of Zoning Appeals at a regular meeting (that all of the owners of property in the square which had been zoned for business as hereinbefore set out were either present in person at said meeting or had presented to said board written waivers and consents to the improvements the appellee contemplated making) ; that the application of appellee for approval of the design for the erection of a business structure was submitted to the Board of Zoning Appeals, which board accepted said design and instructed the Commissioner of Buildings to issue a permit for such improvements; that a building license was issued on November 5, 1926, and shortly thereafter appellee began excavating and the construction of a foundation, and before a superstructure could be placed appellee was notified that the Board of Public Works intended to appropriate certain portions of its property for the widening of Forty-sixth Street, and that continuance of the work would be at appellee's risk. Shortly thereafter appellee was notified that the City Plan Commission intended to take additional set-back property for other purposes, and therefore, appellee, in the face of said warnings and proceedings, took no further action toward the completion of said structure for some time. Later appellee asked for and was granted a renewal of its building license, and same was issued under date of December 31, 1927. At a later date appellee commenced additional work upon the structure, and on the morning of August 21, 1928, the Commissioner of Buildings or his representative appeared on the premises of appellee and ordered its workmen to cease work, stating that the license had been revoked and that the City Plan Commission, under date

of June 5, 1928, had rescinded its action and restricted the said district to residence property only; that the building commissioner held that the construction of the building was not in accordance with the zoning ordinance of the city of Indianapolis, and thereupon caused the workmen to be placed under arrest and would not allow the building to be constructed.

Appellee, in its amended complaint, asked that appellants be perpetually enjoined from entering upon its real estate or interfering with the erection of said building thereon, and for damages to the extent of $5,000.00.

To the amended complaint appellants filed a motion to make more specific, which motion the court overruled. The appellants thereupon filed a demurrer, which was also overruled, and they then filed an answer in two paragraphs, the first being in general denial and the second an affirmative answer, to which second paragraph appellee filed a reply in general denial.

The cause was tried by the court, who found for the appellee, granting a permanent injunction against appellants, enjoining them from entering upon the said property, interfering with construction work thereon, etc. The appellants then filed a motion for a new trial, which was overruled.

The appellants have assigned as error here: 1st, overruling of motion to make amended complaint more specific; 2d, overruling of demurrer to amended complaint; 3d, overruling of motion for a new trial, which assigns two reasons: (a) that the decision is not sustained by sufficient evidence, and (b) that the decision is contrary to law.

The statute governing zoning is Chapter 225 of the Acts of 1921, being Secs. 10372 to 10377 Burns 1926, and so much as is applicable here provides: "In order to conserve the value of property in the city and to the end that adequate light, air, convenience of access, and

safety from fire and other danger may be secured; that congestion in the public streets may be lessened or avoided, and that the public health, safety, comfort, morals, convenience, and general welfare may otherwise be promoted, *the common council* in each city *shall have the following powers:* To classify, regulate and limit the height, area, bulk and use of buildings hereafter to be erected; to regulate and determine the area of front, rear and side yards, courts and other open spaces about such buildings; to regulate and determine the use and intensity of use of land and lot areas; *to classify, regulate and restrict the location of trades, callings, industries, commercial enterprises and the location of buildings designed for specified uses;* to divide the city into districts of such kinds, character, number, shape and area as it may deem best suited to carry out any or all of the purposes of this section," etc. (Our italics.)

Sec. 3 of the Act provides that: "The common council of any such city may from time to time after public notice and hearing *amend, supplement* or *change* the *regulations* and *districts* fixed by ordinance pursuant to this act." (Our italics.)

Sec. 4 provides that: "The common council of any such city may create a Board of Zoning Appeals . . . Provided that the common council in any city may, by ordinance, designate the City Plan Commission as the Board of Zoning Appeals and the powers, jurisdiction or otherwise hereinafter provided for Boards of Zoning Appeals shall in that event be vested in such City Plan Commission. Such Board of Zoning Appeals shall hear and determine appeals from and review any order, requirement, decision or determination made by an administrative official or board charged with the enforcement of any ordinance or regulation adopted pursuant to this act, and shall permit and authorize exceptions to and variations from the district regulations in the

classes of cases or in particular situations specified in such ordinance. . . . Where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, the Board of Zoning Appeals shall have power, *in passing upon appeals, or petitions for variance* from district regulations, to vary or modify any of the rules, regulations or provisions of such ordinance so that the *spirit* of the ordinance shall be observed, public welfare secured or substantial justice done.    (As amended, Acts 1925, p. 305.) (Our italics.)

The legislature gave to the common councils certain powers to legislate concerning zoning of districts within and adjacent to their cities.    It also gave them the authority to amend, change or supplement the regulations and districts so provided.    The Board of Zoning Appeals was granted power by the legislature to *"hear and determine appeals* from and review any order, requirement, decision or determination made by an administrative official or board charged with the enforcement of any ordinance or regulation adopted pursuant to this act, and shall permit and authorize exceptions to and variations from the district regulations in the classes of cases or in particular situations specified in such ordinance, and they shall hear and try all matters referred to them or upon which they are required to pass under any such ordinance of the common council adopted pursuant to this act. . . . Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of such ordinance, the Board of Zoning Appeals shall have power, *in passing upon appeals, or petitions for variance* from district regulations, to vary or modify any of the rules, regulations or provisions of such ordinance so that the *spirit* of the ordinance shall be observed, public welfare secured or substantial justice done."    (Our italics.)

From the language of this statute we see that the Board of Zoning Appeals has authority only in appeals and petitions for variance.

Here there was not an appeal from the action of an officer, or board, or a petition for a variance. The board, upon its own motion, attempted to permit a variance when there was no appeal or petition before them. They have attempted to rezone an entire city block under the guise of a variance. This is not what the legislature meant by a variance or exception.

Realizing that there would be many small matters in which a very slight deviation from the ordinance would not affect the value of property, the public health, safety, comfort, morals, convenience, or general welfare, the legislature provided for a Board of Zoning Appeals. And that in certain cities the City Plan Commission could be such Board of Zoning Appeals. It provided that the board should "hear and determine appeals from and review any order, requirement, decision or determination made by an administrative official or board," this to take care of any arbitrary ruling such officer or board might make.

Then recognizing that in extreme cases they should not be bound by rules or standards that were too hard, the statute was broadened to take care of those situations. This is the language: "Where there are *practical difficulties* or *unnecessary hardship* in the way of carrying out the strict letter of such ordinance, the Board of Zoning Appeals shall have power, *in passing on appeals,* or *petitions for variance* from district regulations, to vary or modify any of the rules, regulations or provisions of such ordinance so that the spirit of the ordinance shall be observed, public welfare secured or substantial justice done."

The legislature realized that after a zoning ordinance

was once in effect investments would be made in property in certain districts in reliance upon the knowledge that such property was in a restricted zone. They therefore took great precaution to insure that hasty or immature action would not be taken to change, amend, or supplement such districts. It was provided that, before the ordinance could be amended, at least 50 per cent of the owners of frontage on a street in a district should, by a signed petition, ask the common council to do so. That said petition must be referred to the City Plan Commission, who shall act thereon and report in time for the council to vote thereon within 90 days. Should the plan commission report be adverse, or 20 per cent of the owners of the frontage proposed to be altered protest in writing, such change, etc., can only be accomplished by a 75 per cent vote of the entire council. Such drastic provisions leads to the inevitable conclusion that the legislature did not intend for zoning ordinances to be changed as was here attempted.

This seems to us conclusive that the legislature intended, where any considerable change is to be made, it must be made by ordinance.

Since there was here an attempt to amend or change a whole city block without an ordinance by the common council we hold that such action was not contemplated by the act and is void. The City Plan Commission sitting as a Board of Zoning Appeals here exceeded the power granted them by the legislature, as they were neither passing upon an appeal or a petition for a variance and such action is beyond their power. Since the act of the board was void it naturally follows that any permit issued, based on such action, is of no effect.

Building permits or licenses issued by the City Controller have no force and effect to authorize the con-

struction of a building contrary to the ordinance. The act of the controller in issuing such a permit, and the Building Commission in approving plans for such building, is beyond the authority of either to bind the city thereby. *Rippinger* v. *Niederst* (1925), 148 N. E. 7, 21 C. J. 1191; *Siegemund* v. *Bldg. Commr.* (1927), 156 N. E. 852, 160 N. E. 795.

The appellee contends that the city is estopped by the acts of its officers, but it is well settled that a city cannot be estopped by the acts of an officer where the act is beyond his authority. *Rissing* v. *City of Fort Wayne* (1893), 137 Ind. 427, 37 N. E. 328; *Union School Township* v. *First National Bank of Crawfordsville* (1885), 102 Ind. 464, 2 N. E. 194; *Newbery* v. *Fox* (1887), 37 Minn. 141, 33 N. W. 333.

The trial court erred in overruling the demurrer to the amended complaint and this cause is therefore reversed.

Lockyear, J., not participating.